FREDERICK A. BUTMAN *versus* PELATIAH HUSSEY.

Where, upon a purchase of real estate by a quitclaim deed, both parties suppose the title to be good, a failure in the title will not, *of itself alone,* entitle the vendee to reclaim the purchase money.

IN 1840, one Diana G. Emery brought an action against Lot Vinal and Waldo P. Vinal, and attached a lot of land on the writ. She recovered judgment and set off twenty-five acres of the land upon her execution in 1841. Afterwards, in 1842, she brought a writ of entry, against Levi G. Vinal to recover the land thus levied, and attached upon the writ, all his land within the county. In 1844, she obtained a verdict upon certain rulings of the Judge, to which said Levi G. Vinal excepted, whereupon the action was suffered to lie in Court undisposed of for a long time. While affairs were thus situated, Levi G. Vinal mortgaged the whole lot, (of which a part had been levied by Mrs. Emery as aforesaid,) to Ebenezer Hussey, to secure a note of $500,00, which he had made to the mortgagee. Upon the death of Ebenezer Hussey, the defendant was appointed his executor. In that capacity he sold and assigned the note and mortgage to the plaintiff for $200. Afterwards, in 1847, Mrs. Emery recovered judgment in her suit against Levi G. Vinal, for said twenty-five acres and for rent and costs, $136,99. To satisfy that sum she levied on a further portion of the land.

The plaintiff thereupon claimed to rescind the purchase, which he had made of the defendant, and demanded back the $200,00, and its interest, and tendered back the note and mortgage and a re-assignment made by himself.

This recision he claimed *first,* upon the ground of false and fraudulent representations by the defendant, upon the strength of which he was induced to purchase. Upon this point the evidence was as follows : —

One Hoyt testified, that at defendant's request, he asked plaintiff to purchase the note and mortgage ; that plaintiff replied, " they will get it into Court again, won't they ?" To which the witness said, " I do not know;" that, afterwards

the parties had an interview, when plaintiff inquired if there were any claims upon the estate, to which defendant said there was none, except the mortgage to Johnson; that he had examined the records and could find no other. The witness states further, that he believed something was said about dower; that he made no mention of the Emery lawsuit, because he believed it was settled; that he examined the records for the defendant, but did not examine the book of attachments.

If this ground for rescinding the sale cannot be sustained, then the plaintiff claims to rescind, *secondly*, because of mutual mistake.

The case was submitted, with power in the Court to draw inferences as a jury might.

*Kelley* and *McCrillis*, for plaintiff.

*Appletons*, for defendant.

WELLS, J. — The defendant, as the executor of Ebenezer Hussey, on the third of June, 1847, assigned to the plaintiff a note and mortgage made to the testator by Levi G. Vinal in 1845.

In May, 1840, the premises assigned were attached by Diana G. Emery, in her suit against Lot and Waldo P. Vinal. This suit was prosecuted to judgment; and the execution was levied upon a part of the premises in 1841.

In September, 1842, a writ of entry was brought by Emery against Levi G. Vinal to recover the premises upon which the levy had been made by her in 1841, and an attachment was made in this action of all the real estate of Levi in the county of Penobscot. Upon a trial of this action, in 1844, a verdict was returned for the defendant, but exceptions were taken, and a new trial was granted in June, 1847. Subsequently a judgment was rendered in favor of Emery for twenty-five acres of the land demanded, and for rents and costs of suit, which were satisfied by a levy upon a portion of the premises assigned.

The plaintiff claims to recover on the ground of fraud or mistake.

Taking what was said by the defendant together, at the time of the assignment of the note and mortgage, it amounts to a declaration that he had examined the records, and that he had found no incumbrance upon the premises, except the mortgage to Johnson.

No evidence discloses, that this declaration was false or made with any intention to deceive. His having overlooked the attachments in his examination, is not inconsistent with honesty. He might have looked very carefully, as he thought, and still not have noticed them.

Joseph Hoit, a witness for the plaintiff, had examined the records of deeds, but not those of attachments, because he supposed the suit of Emery had terminated. He did not mention that suit to the defendant. He called on the plaintiff, at the request of the defendant, to purchase the mortgage, with the belief that there was no incumbrance shown by the records. He was not certain that the rights of dower were mentioned by the parties, but had an impression that they were.

His belief, that the premises were unincumbered, except by the rights of dower, fortifies the conclusion, that the defendant might honestly entertain the same opinion.

But the plaintiff appeared to have had some knowledge of the suit of Emery, for his question put to the witness, Hoit, expressed an apprehension, that it might be further litigated, and indicated that he had some knowledge of the exceptions then pending.

If the plaintiff had a knowledge of that suit, it would embrace also the first, for the last was brought to recover the land, upon which the levy had been made, and the fruit and effect of the first depended upon the result of the last.

It may be fairly inferred from the testimony of Hoit, that the plaintiff had knowledge of the suit, at the time he purchased the mortgage, and could not therefore have been deceived by its not being mentioned.

But, assuming that both parties were equally ignorant of the

existence of the incumbrance, the plaintiff claims a recovery back of the consideration paid for the note and mortgage, on the ground of a mutual mistake.

Where both parties suppose the title to real estate to be good, but it turns out to be otherwise, and the purchaser has taken a deed of quitclaim only, he has not a right, under such circumstances merely, of reclamation of the consideration. Such is not the understanding of the parties, when they use this mode of conveyance. Although the parties believe the title to be good, yet the grantor does not mean to be held responsible for its goodness. He avoids a liability for a latent and unknown defect, by the form of the deed. If the rule of law were different, he would be bound to repay the consideration to his grantee, though he had studiously avoided any agreement to do so, when he had sold in perfectly good faith, because both parties believed the title to be good.

If the grantor practices no fraud, thinking his title to be good, the use of a deed of quitclaim in making a conveyance is equivalent to saying, I believe my title to be good, but I will not be responsible if it turns out to be otherwise. Both parties may be surprised, by the subsequent discovery of a defect of title of which they were previously ignorant, but no liability is thereby created against the grantor. A grantee may always guard his rights in such cases by taking proper covenants. *Joyce* v. *Ryan*, 4 Greenl. 101 ; *Emerson* v. *The county of Washington*, 9 Greenl. 88 ; *Soper* v. *Stevens*, 14 Maine, 133.

But relief is not even given in equity in cases of mistake falling within its rules, when the party seeking it could by reasonable diligence have discovered the fact, which caused the injury. 1 Story's Eq. § 146.

The plaintiff did not examine the records, the land lying in the county, in which he resided, nor examine as to the existence of the incumbrance of which he appeared to have had some notice. He could not be considered, under the circumstances, to have exercised reasonable diligence, there having

been no circumvention or purposed concealment on the part of the defendant.

Where it appears by the transaction, that the risk of the title is not taken by the grantee, and there is a mutual mistake in relation to it, a mistake material and essential, equity will give relief. 1 Story's Eq. § 141, *et sequentia.*

So where there was a mutual mistake as to the premises, described in a bond for the conveyance of a lot of land, and no beneficial interest obtained, the assignee of the bond recovered back the money paid for it. *Norton* v. *Marden,* 15 Maine, 45. The action was not sustained, on the ground of a failure of title to the land described in the bond, but because the lot, upon which the parties entered and supposed to be the one described, before making the assignment, was ascertained after the assignment, to be another one. It was a mistake as to the identity of the lot, and the bond did not describe the one, which the parties believed it did.

No grounds are exhibited, upon which the action can be maintained, and according to the agreement of the parties a nonsuit must be entered.